# Richmond

CLYDE B. STOVALL, JR. V. COMMONWEALTH OF VIRGINIA.

June 12, 1972.

Record No. 7899.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Albert J. Ahern, Jr.,* for plaintiff in error.

*Burnett Miller, III, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The defendant, Clyde B. Stovall, Jr., was convicted by the trial court, sitting without a jury, of the unlawful possession of LSD in violation of Code § 54-446.4(c) (Repl. Vol. 1967).[1] He was sentenced to serve twelve months in jail, eleven of which were suspended. We granted him a writ of error.

The LSD, for the possession of which the defendant was convicted, was seized in his home on November 20, 1969, pursuant to a search warrant issued on that date by a special justice of Arlington County. Before trial, the defendant moved to suppress the drugs so seized. The motion was denied, and the drugs were admitted into evidence at trial.

---

[1] Code § 54-446.4(c) was repealed by Acts of Assembly 1970, ch. 650, at 1358-59. The comparable section is now Code § 54-524.101(c) (Repl. Vol. 1972).

The affidavit upon which the search warrant was issued was sworn to by Officer Meixner of the Arlington County Police Department. The affidavit was dated the same day the warrant was issued, November 20, 1969, and was worded in pertinent part as follows:

"(2) The material facts constituting probable cause for issuance of the warrant.

On 8/27/69 the affiant and Det. Cheslock received information from a confidential source who is known to be reliable and who has given information in the past eleven months that has led to the arrest of two persons, and their subsequent convictions in Arlington County Circuit Court, and the seizure of a substantial quantity of contraband narcotics.

That one, Skip Stovall described as a white male with long red hair and a red beard and hippie type in appearance was dealing in drugs and narcotics, and was to receive a large shipment of hashish on 8/27/69.

On 8/30/69 information was received from the same source, who provided information on 8/27/69 that Skip Stovall received a large quantity of LSD.

On 9/9/69, a confidential source of information believed to be reliable and who has given reliable information in the past advised Det. Wickstrand ACPD that a subject named 'Skip' who is described as a white male, hippie with red hair and a red beard, had a large amount of LSD at 2134 North 20th Street, Arlington, Virginia, the information was based on the personal observation of the above stated source.

Investigation revealed that the subject residing at 2134 N. 20th Street, Arlington, Virginia is Skip Stovall mentioned in the information received on 8/27/69 and 8/30/69.

On 11/20/69 the affiant received information from Det. Luzi of the Fairfax County Intelligence Squad, Fairfax County Police that Skip Stovall has a large quantity of marihuana stored on the premises of his home in Arlington County, Virginia, and the premises described as an older house with imitation brick or stone siding and a driveway of gravel in which a silver colored Renault sedan is parked. This is the same physical description including the automobile as 2134 North 20th Street, Arlington, Virginia, which is known to be the home of Skip Stovall. It is the affiant's belief that narcotics are being stored in the described premises at this time."

The defendant contends that the affidavit was insufficient to show the existence of probable cause when tested by the standards laid down by the United States Supreme Court in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).

The Commonwealth argues that the information relating to the period from August 27 to September 9 was sufficient in itself to show probable cause. Alternatively, the Commonwealth argues that while the allegations concerning November 20, standing alone, were inadequate to establish probable cause,[2] these allegations when read together with the earlier information showed "a continuing evidentiary connection between drugs and [the defendant] and the [defendant's] residence." Thus, the Commonwealth asserts, there was established probable cause to believe drugs were present in the residence on November 20.

The defendant counters by arguing that the allegations relating to August 27 and August 30, 1969, while setting forth sufficient facts to show the credibility of the informant, failed to state any facts showing criminal conduct; that the allegations respecting September 9, while based upon personal observation, failed to establish the credibility of the informant; and that the allegations pertaining to November 20, while concededly emanating from a reliable source, a police officer, were mere conclusions of the informant. The defendant further argues that even if the reports concerning the period from August 27 to September 9 be deemed sufficient to have shown probable cause as of September 9, they were too remote in point of time to establish probable cause as of November 20.

We will assume, for the purposes of this decision, that the allegations of the affidavit relating to the period August 27 to September 9, 1969, would have been sufficient to support a finding of probable cause for the issuance of a search warrant on September 9. The crucial questions then become:

1. Disregarding the November 20 allegations and focusing solely upon the August 27 to September 9 period, was the information in the affidavit sufficient to support the conclusion that drugs were

---

[2] The necessity for this concession is readily apparent from the purely conclusionary nature of the allegations relating to November 20, 1969. *Aguilar* v. *Texas*, 378 U.S. 108 (1964). The trial court recognized the inadequacy of the allegations when it stated, in its written opinion, that "the November 20, 1969, information, would probably, under the cases, not have justified the issuance of a search warrant." The court upheld the affidavit upon the theory that the November 20 allegations showed continuing criminal conduct on the defendant's premises.

probably in the defendant's residence on November 20, the date the search warrant issued?

2. If Question No. 1 is answered in the negative, were the allegations relating to November 20 sufficient to support the conclusion that criminal conduct probably had continued until the time the search warrant issued?

That these matters must be the focus of our inquiry is dictated by the rule that before a search warrant may issue, the magistrate must be satisfied that probable cause to search exists at the time the warrant is issued. His conclusion that probable cause does exist must be based upon facts reasonably related in time to the date of the issuance of the warrant. *Sgro* v. *United States*, 287 U.S. 206, 210-11 (1932); *Schoeneman* v. *United States*, 317 F.2d 173, 177 (D.C. Cir. 1963).

We turn first to the question whether the information relating to the August 27 to September 9 period was sufficient in itself to show probable cause to search on November 20, 72 days later. While time alone is not controlling, evidence that one was illegally in possession of drugs on a given date is not probable cause to believe that he possesses illegal drugs 72 days thereafter. Consequently, the information in the affidavit relating to the August 27 to September 9 period was too stale, standing alone, to support a finding of probable cause on November 20.[3] So the affidavit can be sustained only if the allegations pertaining to November 20 were sufficient to show the probability that the criminal conduct continued up to the time of the issuance of the search warrant. *See Commonwealth* v. *Shaw*, 444 Pa. 110, 113-14, 281 A.2d 897, 899 (1971). We are of opinion that the November 20 allegations were not so sufficient.

Officer Luzi's statement to Officer Meixner on November 20 was a mere conclusion that "a large quantity of marihuana" was stored on the defendant's premises. As conceded by the Commonwealth, this assertion, standing alone, would not have been sufficient to establish probable cause. This is not to say that, given the authenticity of the earlier information relating to criminal conduct, the allegations of the affidavit pertaining to November 20 must have met the precise requirements of *Aguilar* and *Spinelli*, as would have been necessary had the November 20 allegations stood alone. *See, e.g., Draper*

---

[3] Our research has disclosed no case which has upheld the issuance of a search warrant based upon information as old as that under consideration in the case at bar. *See Annot.*, 100 A.L.R.2d 525 (1965).

v. *United States*, 358 U.S. 307 (1959). Nevertheless, there should have been set forth some factual allegation which, when added to the earlier information, would have led the reasonable mind to believe that criminal conduct probably continued until the time the search warrant issued. *See Durham* v. *United States*, 403 F.2d 190, 195 n. 7 (9th Cir. 1968); *Schoeneman* v. *United States*, *supra* at 177 n. 9. No such facts were alleged, and so the affidavit and search warrant must fall. It follows that the evidence seized under the warrant should have been suppressed.

The judgment of the trial court will be reversed and the case remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*